433 P.2d 287

Chris C. ANDREASON, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Glenn B. Heward (Heward Motor Company), Respondents.

No. 1 CA-IC 134.

Court of Appeals of Arizona.

Nov. 14, 1967.

Donald J. Morgan, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Joyce Volts and Dee-Dee Samet, Phoenix, for respondents.

CAMERON, Chief Judge.

This matter is before the Court by writ of certiorari granted on petition of the injured workman to review the lawfulness of the respondent Industrial Commission's award of 24 January 1967 which affirmed a previous determination of petitioner's loss of earning capacity.

The sole question before the Court is whether the award of the Commission which found that the petitioner has sustained a 42.14% reduction in earning capacity, based upon a further finding that "applicant can reasonably be expected to earn, as an insurance adjuster, $550.00 per month", is reasonably supported by the evidence.

The facts necessary for a determination of this matter are as follows. The petitioner, a man who is presently 43 years old, sustained an industrial injury in 1960 for which a laminectomy and fusion were performed in 1961. His average monthly wage was established at $950.50, and it was determined that he had sustained a 10% general physical functional disability. Exploratory surgery was performed on petitioner's back in late 1964. The fusion was determined to be solid, and nothing abnormal was found. The petitioner was discharged to regular work with no increase in disability in April of 1965.

Following his release for light work the petitioner attempted to return to his primary occupation, as a body and fender repairman. This attempt lasted only 7 days, during which time the petitioner experienced swelling around the incision. He was assured by his doctor that this would disappear with continued activity, however, he elected to seek other employment. The petitioner then worked for a brief period in plastic molding. Early in 1965 he invested in a used car business. According to his testimony he had earnings of approximately $250.00 per month during this period. His wife also drew a monthly wage from the corporate profits.

In October of 1965 the petitioner invested in a soft ice cream stand, and this proved to be disastrous from a business standpoint.

Two formal hearings were held in June and August of 1966 for the purpose of redetermining the petitioner's loss of earning capacity. At the August 1966 hearing, the petitioner testified as follows about his business:

"Well, I am worried about the tastee-freeze business, and I have got to try to recover what I can off this thing before I try to get involved elsewhere, I would say. I still owe money on the thing, too, and I have got better than $11,000. I have got everything sunk in the thing that I can scrape together. I have got two kids in high school, and you get desperate when you are not able to hold a job."

The petitioner was questioned as to how long it might take him to sell his business, and answered that he had been advised by someone in the Tastee-Freeze Company that the best time to sell it would be in the spring.

The petitioner also testified that he had taken a correspondence course in insurance adjusting, and that he had tried several times to get employment as an insurance adjuster. Counsel for the Industrial Commission indicated that she had discussed the petitioner with a Mr. Hamilton of the Allstate Insurance Agency, and indicated to the petitioner that:

"Q It might be worth a try because Mr. Hamilton said, 'We not only have adjusters, but I am anxious to get applications right this minute. If you know anybody that is interested, send them up.' I said, 'What will they start at?' He said, '$525 to 550 per month. That is only the starting figure, but I am in need of them.'

So it might be worth a try, if you will call them. That was at 9:00 this morning when I talked to him about it. I don't know whether there was anything available in that sort of work."

This is the only place in the file we can find any "testimony" regarding this amount of salary.

On the basis of this "testimony", the Commission issued the award and findings of 28 October 1966 which determined that petitioner was able to earn $550.00 per month as an insurance adjuster. Prior to this time the petitioner had not been represented by counsel. Following the issuance of the October award the petitioner obtained counsel who filed a motion for rehearing on behalf of the petitioner. There is correspondence in the file from the petitioner's attorney indicating that the petitioner had followed up on counsel for the Commission's suggestion, and had made application for a position as an insurance adjuster with many different companies, only to be turned down. In addition there is a letter in the file from the Claims Manager of Liberty Mutual dated 5 December 1966 thanking the petitioner for the submission of his résumé and indicating that the firm does not hire adjusters beyond 29 years of age. There is a second letter from counsel for petitioner indicating that he had been in touch with the Allstate Insurance Agency, mentioned by counsel for the Commission at the hearing, and had been advised that the particular man the Commission's counsel referred to was not in charge of hiring at his

firm, and that he did not intend his conversation with counsel to indicate that there was a definite job opening at the time. Counsel's letters state that petitioner had sent applications to eleven different major insurance adjustment firms, with a complete résumé of his experience and qualifications, and as of the date of the letter, 27 December 1966, he had no results. There is a subsequent letter in the file dated 28 December 1966 from the petitioner to his counsel indicating he was enclosing the one reply (presumably the one from Liberty Mutual) which he received in answer to "the eighteen letters with résumé mailed out."

The Commission did not set a further hearing in this matter, but on 24 January 1967 it issued a decision affirming the October 1966 award. This decision contained a 30-day clause, indicating that the petitioner's recourse was to this Court.

 It is the function of the Court of Appeals, when petitioned to review Industrial Commission awards, to determine whether the evidence before the Commission reasonably supports their decision and not to try the case anew. Everett v. Industrial Commission, 3 Ariz.App. 145, 412 P.2d 487 (1966). In the instant case the only mention of the possibility that the petitioner could secure employment as an insurance adjuster at a starting wage of approximately $550.00, came from the Commission's counsel as part of a "question" on cross-examination in the hearing on 29 August 1966. We stated in Womack v. Industrial Commission, 3 Ariz.App. 74, 412 P.2d 71 (1966), that leading questions asked of the witness on cross-examination are not evidence which can conflict with the positive evidence submitted by the petitioner. This statement is applicable in the instant case. There was no evidence before the Commission which would support a finding that the petitioner could earn $550.00 per month as an insurance adjuster. To the contrary, there was evidence in the file that the petitioner had made an honest and diligent attempt to secure such work and had met with no success.

Both this Court and the Arizona Supreme Court have discussed the difficulty that the Commission faces in determining future earning capacity. Hughes v. Industrial Commission, 3 Ariz.App. 51, 411 P.2d 474 (1966), Davis v. Industrial Commission of Arizona, 82 Ariz. 173, 309 P.2d 793 (1957). However difficult it may be in individual cases to arrive at a fact determination as to whether a disabled workman, in a competitve market, can sell his services and for how much, Sproul v. Industrial Commission, 91 Ariz. 128, 370 P.2d 279 (1962), we do not feel that the members of the Commission may base an award solely on a leading question or self-serving statement made by an attorney for the fund. For the Commission to base its determination of loss of earning capacity upon such "evidence" is clearly arbitrary, and the award is, in this regard, not supported by any reasonably admissible evidence.

Award set aside.

DONOFRIO and STEVENS, JJ., concur.