446 P.2d 251

**George P. LUTICH, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent Insurance Carrier,**

and

**Magma Copper Company—San Manuel Division, Respondent Employer.**

**No. I CA–IC 204.**

Court of Appeals of Arizona.

Oct. 21, 1968.

Rehearing Denied Nov. 8, 1968.

Review Denied Dec. 17, 1968.

Strickland, Altaffer, Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

Robert D. Steckner, Chief Counsel, Phoenix, by Dee Dee Samet, Tucson, for respondent Insurance Carrier The Industrial Commission.

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for respondent Employer Magma Copper Company, San Manuel Division.

CAMERON, Chief Judge.

This case is before the Court by writ of certiorari brought by the petitioner, to review the lawfulness of an award and findings of the Industrial Commission issued 5 April 1968.

The facts necessary for a determination of this case are as follows. The petitioner was severely injured on 14 June 1965, in the course and scope of his employment, when he fell across railroad tracks in the respondent's underground mine and was run over by an ore car, suffering a fractured pelvis, fractured vertebrae, tremendous soft tissue injuries, and an enormous hematoma of the posterior lumbar region and left hip. His claim with the Industrial Commission was accepted and he received accident benefits and temporary compensation until his condition was found to be stationary on 12 September 1966. A board of medical consultation determined that at that time he had a 25% permanent partial general disability as the result of the industrial accident.

The petitioner returned to work with the respondent Magma Copper Company on 2

October 1966 as a toolroom man. His duties include requisitioning, storing and issuing equipment, and doing janitorial work in the lunchroom as well as the toolroom.

The job of the toolroom man is included in the union labor contract, which provides seniority ratings for different job classifications. New underground employees start at a No. 3 rate of pay, and under union contract toolroom men fall in the No. 6 rate of pay. As a timberman, prior to the accident, the applicant was in No. 7 rate of pay.

The Industrial Commission award complained of makes detailed findings of fact including that the petitioner was 55 years of age at the date of injury, that his formal education terminated at the fourth grade, that his work experience was chiefly that of a miner and began when he was 16 years of age. In 1955 the petitioner was hired as a timberman at the San Manuel Mine and worked as such until his injury. He served in the armed forces in the Infantry and received no army training in special skills, but was trained to read and write. The award concluded that the applicant sustained a 2.93% reduction in earning capacity, that percentage being the difference between his rate of pay as a Grade 7 mine employee and his rate as a Grade 6 employee. The question presented to this Court is whether the award and findings of the Commission are reasonably supported by the evidence.

■ We are of the opinion that the record reasonably supports the award and findings of the Commission. The petitioner argues that the Commission failed to consider those factors set forth in A.R.S. § 23–1044, subsec. D in determining what loss of earning capacity the petitioner suffers. § 23–1044, subsec. D is as follows:

"D. In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability, the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury."

The findings and award of the Commission indicate that all of the requirements set forth in this section were considered by the Commission in reaching its determination.

■ The petitioner also argues that his present wages do not reflect correctly what he could sell his services for in the open competitive labor market. He introduced testimony of a John Butler, an employee of the Employment Security Division of the State of Arizona, to the effect that it would be difficult for him to sell his services in the Tucson area labor market. Conflicting with this evidence there is ample evidence in the record which substantiates the Commission's relying upon petitioner's actual earnings as being the amount he can sell his services for in a competitive labor market. The San Manuel Mine Superintendent, Mr. Keith Staley, testified that prior to the date of the accident, 15 June 1965, he had people manning the toolrooms, and that they had had them so employed since the opening of the mine. He testified that these men fill a classification that exists in the union contract and that these jobs are seniority jobs and are bid by the men under the terms of this union contract. He stated that approximately 15 men were employed in shifts to man the toolrooms.

The assistant shift foreman who supervised the petitioner testified that the petitioner had satisfactorily performed his work and that he seemed to have improved in his ability to "get around" since his return to work. When questioned by the petitioner's attorney concerning what other types of jobs might be available to the petitioner, he testified that the petitioner could also work as a construction man doing minor construction work. He testified

that there was also a job classified "track man underground" which involved checking the railroad switches, that would be available to a man with the petitioner's physical limitations.

In addition to these two men, the Magma Copper Personnel Director also testified. He was asked by petitioner's attorney why the toolroom men were not hired on the open labor market and answered that the primary reason was that under the union contract and the seniority rules set forth in it, the employer is required to hire men with union seniority for this type of job which carries a No. 6 rating.

In Garrard v. Industrial Commission, 6 Ariz.App. 373, 432 P.2d 921 (1967), this Court stated:

"* * * it is the prerogative of the Industrial Commission to resolve such conflicts in evidence. Dunham v. Industrial Commission, 4 Ariz.App. 575, 422 P.2d 406 (1967)."

And in Andreason v. Industrial Commission, 6 Ariz.App. 434, 433 P.2d 287 (1967), this Court stated:

"It is the function of the Court of Appeals, when petitioned to review Industrial Commission awards, to determine whether the evidence before the Commission reasonably supports their decision and not to try the case anew. Everett v. Industrial Commission, 3 Ariz.App. 145, 412 P.2d 487 (1966). * * *"

The job which the petitioner is currently fulfilling was not a job that was created for him out of sympathy by his employer. It is a job which existed prior to his accident and which the evidence indicates will exist after the petitioner reaches retirement age. The Supreme Court has said:

"* * * In Shroyer v. Industrial Commission, 99 Ariz. 266, 408 P.2d 406 (1965), we pointed out that 'earning capacity' of a disabled man is determined as of the time of the hearing and by considering petitioner's average earnings along with all other evidence pertaining to obtaining and holding employ-

ment similar to that in which the disabled person was doing before the injury." Maness v. Industrial Commission, 102 Ariz. 557, 558, 434 P.2d 643, 644 (1967).

It is the opinion of this Court that that test has been met in the instant case. For this reason, the award of the Industrial Commission is affirmed.

DONOFRIO and STEVENS, JJ., concur.