436 P.2d 621

Theo MONTGOMERY, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Lake Havasu Materials Company, Respondents.

No. 1 CA–IC 140.

Court of Appeals of Arizona.

Jan. 29, 1968.

Rehearing Denied Feb. 27, 1968.
Review Denied March 26, 1968.

Herbert B. Finn and Stephen T. Meadow, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Donald L. Cross, Phoenix, for respondent, The Industrial Commission.

DONOFRIO, Judge.

This is a writ of certiorari to review the lawfulness of the decision of The Industrial Commission of Arizona in finding that

petitioner has no permanent disability as the result of an industrial injury.

Two issues are raised. The first is whether the finding is reasonably supported by the evidence. Next, whether the petitioner was denied fair and legal processing of his claim by reason of the participation in the case of the attorney representing the fund.

■ With reference to the first issue, this court must consider the evidence in a light most favorable to sustaining the Commission's award. Donaldson v. Industrial Commission, 2 Ariz.App. 172, 407 P.2d 111 (1965). The petitioner, a forty-eight-year-old heavy construction worker, was employed as a cement mixer operator driving a cement mixing truck. On the 17th day of November, 1965, petitioner while climbing down off his truck slipped and fell to the ground, landing on his left shoulder and twisting his shoulder and lower back. He was treated the same day by Dr. A. A. Arnold of Kingman and his injuries were diagnosed as severe contusions and a strain of the thoracic lumbar area. The X rays taken on the day of the injury revealed an old wedging of the lower dorsal and upper lumbar bodies, but no new injury. Shortly thereafter petitioner was treated by his regular doctor, Dr. H. R. Price. Petitioner's claim for temporary disability was accepted, and he received payments thereunder. Dr. Price diagnosed the injury as an acute lumbrosacral sprain. On December 3, 1965 Dr. Price reported that petitioner should be able to return to his regular work as a truck driver. Petitioner returned to his regular job, but was unable to perform the work. Dr. Price continued to follow petitioner's injury until February 1966 when Dr. Steele, an orthopedic specialist, was called in consultation. Dr. Steele found no new injuries and reported that petitioner should continue on a regular work status. Dr. Steele saw petitioner on two subsequent occasions and his opinion remained the same. Petitioner continued to have symptoms of low aching back pain and pain in

his right leg. In order to discover the cause of petitioner's pain, a medical consultation board consisting of four doctors was held on April 12, 1966. They felt that petitioner's condition was stationary; that he was not in need of further treatment; and that he could resume his regular work; also that he had no permanent disability attributable to the accident.

On April 28, 1966 the Commission entered its award denying permanent disability. Upon protest, a formal hearing was held on October 6, 1966 at which time an attorney was present representing the fund. The Commission thereafter affirmed its previous findings and award. This was protested and followed up with a petition for rehearing. On February 24, 1967 the referee presiding in the case recommended to the Commission that the petition for rehearing be denied. The referee referred the matter to the attorney for the fund and he concurred with the referee's recommendation. The Commission affirmed its previous decisions.

Testimony by lay witnesses was to the effect that before the industrial accident petitioner was able to do certain work and that since the episode he has been unable to do this work. Petitioner testified that prior to the injury he had never missed a day's work in twenty years, but that since the injury he does not do the heavy work he did before; that prior to the injury he was able to work both at a race track and in heavy construction work; that after the injury he was able to do only the lighter work at the race track and unable to do construction work; that he has nearly constant pain in the lower part of his back that he never had before; that he is not able to work as many hours as he did before; and that he is able to earn just over $100.00 a week. The Commission set his pre-injury earnings at $771.96 per month.

Petitioner urges that the evidence upon which the award is based consists only of medical opinions by the doctors, some of whom may not have had an adequate knowledge of the nature of petitioner's

work, whereas on the other hand the testimony of petitioner and his lay witnesses is all to the effect that petitioner is unable to do the heavy work now that he was able to do before the accident, and that the Commission cannot legally support the award by medical opinion formed in disregard of this evidence.

Respondent contends that when the injury, as in the present case, is not of the type readily apparent to laymen the question of a causal relationship between the industrial accident and the alleged disability lies singularly within the knowledge of medical experts and that petitioner has not met his burden of proving a disability resulting from the industrial accident.

 We have held that when an industrial accident occurs and the results of such accident are not such as can be seen by laymen, the question of permanent disability can be resolved only by expert medical testimony. Bedel v. Industrial Commission, 5 Ariz.App. 470, 428 P.2d 134 (1967). The burden of proof as to the disability lies upon the petitioner.

 A review of the medical evidence shows that it is overwhelmingly to the effect that the physical examinations were within normal limits; that there was no need for further treatment; that petitioner could resume his regular work as a transit-mix truck driver; and that there was no permanent disability attributable to the accident. Petitioner has shown no medical evidence to the contrary. We hold that his lay testimony alone does not meet the burden of proof imposed upon him by the law. To establish his alleged disability petitioner relies heavily on the fact that he has not returned to his previous work. The Supreme Court has stated:

"The mere showing that a claimant has not returned to work is not proof of the fact that he cannot work because of a physical disability arising out of an industrial accident." Davidson v. Industrial Commission (1951) 72 Ariz. 314, 235 P.2d 1007.

We turn now to the second issue of whether petitioner was denied fair and legal processing of his claim by reason of the fact that the Commission had supplied an attorney to appear at the hearings on behalf of the fund and who was later asked whether he concurred or objected to the referee's recommendation. This attorney had rendered his opinion that he had no objections to the referee's report which in effect meant that he concurred in the recommendation that the prior award of no permanent disability be affirmed.

Petitioner claims this routine is violative of the purpose and spirit of the Workmen's Compensation Act; that the attorney is acting in a dual and conflicting capacity to the prejudice of the claimant; that there is no authority in the Commission to use its legal staff to supply a representative for the fund; and that there was no legal protection supplied to the other interests concerned in petitioner's claim comparable to the protection supplied to the fund.

The general powers and duties of The Industrial Commission of Arizona are enumerated in A.R.S. § 23–107. Paragraph A, Subsection 1 thereof reads:

"A. The commission has full power, jurisdiction and authority to:

"1. *Administer and enforce all laws for the protection of life, health, safety and welfare of employees in every case and under every law when such duty is not specifically delegated to any other board or officer,* and, when such duty is specifically delegated, to counsel, advise and assist in the administration and enforcement of such laws." (Emphasis Supplied)

The authority of the Commission to employ others to aid in carrying out its obligations may be found in Paragraph B of A.R.S. § 23–108.

"B. The commission may employ and fix the compensation of such actuaries, accountants, inspectors, examiners, experts, clerks, physicians *and other assistants as necessary* to carry out the duties imposed by law upon the commission.

Such employment and compensation shall be approved by the governor." (Emphasis Supplied)

Ordinarily the Attorney General is the legal advisor of the departments of the state and charged with rendering such legal services as these departments require. This basic authority is to be found in A.R.S. § 41–192. Paragraph E of this statute, however, specifically exempts the Industrial Commission from the operation of the statute. It reads:

"E. Notwithstanding any other provision of law to the contrary, no state agency other than the attorney general shall employ legal counsel or make an expenditure or incur an indebtedness for legal services, but the interstate stream commission and *the industrial commission shall be exempt from the provisions of this article.*" (Emphasis Supplied)

From the foregoing statutes the Commission has authority to employ attorneys to assist it in carrying out the obligations imposed upon it by law. We next consider the propriety of the Commission in appointing an attorney to represent the fund.

A.R.S. § 23–981 is the statutory authority which creates the state compensation fund, hereinafter known as the "Fund". Paragraph A sets fourth the purpose of the Fund.

"A. There shall be a fund known as the state compensation fund which shall be maintained for the purpose of insuring employers against liability for compensation *and of assuring to the persons entitled thereto the compensation provided for in this chapter.*" (Emphasis Supplied)

Paragraph C of § 23–981 established the administrative responsibility of the Commission over the Fund.

"C. The compensation fund shall be administered by the commission without liability of the state beyond payment of losses sustained on account of the fund, and shall be applied to insurance

and to payment of compensation and expenses as provided in this chapter. *The commission shall have full authority over the fund and may do all things necessary or convenient in the administration thereof,* or in connection with the compensation business to be carried on by it under this chapter, and shall adopt rules and regulations for collection, maintenance and disbursement of the fund." (Emphasis Supplied)

In the course of administering the Fund, the Commission calls upon attorneys in its employ to appear at hearings where the liability of the Fund is involved. We believe that since the Fund shall be self-supporting this representation is called for and proper. It is one of the means of insuring the solvency of the Fund.

Rule VI of the Rules of the Departments of The Industrial Commission of Arizona states:

"VI. The Chief Counsel and other members of the legal staff of the Commission who participate in administrative proceedings under these rules shall *do so in behalf of the Commission in its capacity as insurance carrier.*" (Emphasis Supplied)

This rule makes clear the capacity in which attorneys of the Commission's legal department appear at hearings. They appear on behalf of a party interested in the proceedings.

We find the procedure employed herein with reference to the referee's report was properly provided for by rule.

Rule 41.3 of the Rules of Procedure Before The Industrial Commission of Arizona provides as follows:

"41.3 Referee's Report:—The referee conducting the hearing shall write a referee's report embodying findings of fact, conclusions of law and a brief statement of reasons for his findings and conclusions, and shall transmit it to the Commission with the transcript of the testimony, claims file and exhibits. *He shall cause a copy of the referee's report to*

*be served upon the Chief Counsel and all interested parties.* Within such time as designated by the referee, after being served with a copy of the referee's report, *any interested party, including the Chief Counsel, may file written objections thereto with the Commission and serve copies of such objections upon the Chief Counsel and other interested parties.* The Commission, after deliberating on all of the evidence and written objections to the referee's report, may adopt the referee's report or may modify it or may reject it in whole or in part or may receive further evidence, or may recommit the matter to a referee with instructions." (Emphasis Supplied)

The practice of calling on attorneys to represent the Fund is sound because of the statutory duty imposed upon the Commission to maintain the solvency of the Fund. In the instant case the referee rendered his report and informed the petitioner, his attorney, the employer, the legal department, which included the attorney for the Fund, and the chief referee of his recommendations by serving upon them a copy of the referee's report. The chief counsel by memorandum[1] requested from the attorney his comments or objections. The attorney representing the Fund merely noted that he had "No objections."[2]

This action simply records for the benefit of the Commission whether or not the chief counsel and the attorney for the Fund have any objections to the referee's report which is rendered in accordance with the rules. It is the Commission, not the referee or the attorneys, that makes the decision. So long as the Commission properly exercises its function we see no prejudice to claimant if it calls upon the chief counsel and the attorney for the Fund for comments or objections to the referee's report when the referee's report is served upon counsel for the claimant (or the claimant himself if he is without counsel), and he is given the same opportunity to comment or object. We are not shown anything other than that the attorney herein has acted in compliance with the law and rules in advising the Commission which under the law has the sole responsibility of making the final decision. We find there has been a fair and legal processing of the claim

■■ The act is remedial and the proceedings before the Commission are not truly adversary proceedings. The Commission has an obligation to make impartial inquiry into all of the facts, both favorable and unfavorable to the claimants. Lewis v. Industrial Commission, 2 Ariz.App. 522, 410 P.2d 144 (1966). We find no abuse of

1.

DATE: October 28, 1966
TO: Donald L. Cross, attorney
RE: Claim No. BC 47865
 Montgomery, Theo
 REFEREE'S REPORT:
 For comments or objections.
 Robert K. Park,
 Chief Counsel

(1E)

———◆———

2.
November 23, 1966:

 No objections.
 /s/ DONALD L. CROSS (T.F.)
 Donald L. Cross, Attorney

DLC:tf
cc: Mr. Huerta

petitioner's rights or conflict of interest of the attorney for the Fund in the manner in which this claim was processed.

Affirmed.

CAMERON, C. J., and STEVENS, J., concur.