491 P.2d 1141

**STATE COMPENSATION FUND and Double U Ranch, Petitioners,**

**v.**

**Robert T. FERRELL, Respondent Employee,**

**and**

**The INDUSTRIAL COMMISSION of Arizona, Respondent.**

**No. I CA–IC 625.**

Court of Appeals of Arizona. Division 1.

Dec. 20, 1971.

As Corrected on Denial of Rehearing Jan. 13, 1972.

Robert K. Park, Chief Counsel, State Compensation Fund by James E. Mc-Dougall, Phoenix, for petitioners.

Davis & Eppstein by Robert W. Eppstein, Tucson, for respondent employee.

William C. Wahl, Jr., Chief Counsel, The Industrial Comm. of Ariz., Phoenix, for respondent.

HOWARD, Judge.

On September 29, 1969, the respondent employee sustained an accidental injury arising out of and in the course of his employment with the Double U Ranch as a truck driver. Following the industrial accident, the respondent employee continued at his regular work with the Double U Ranch until Monday, October 6, 1969. The respondent employee testified that the reason he left his employment with the Double U Ranch was that on October 6, 1969, he was informed that he was "laid off" from work by his employer.

On October 4, 1969, the respondent employee (hereinafter referred to as respondent) first saw Dr. J. W. Cortner for his injury. Dr. Cortner diagnosed the respondent's condition as a "hematoma and mild sprain-neck." Dr. Cortner was of the opinion at that time that the respondent, as a result of conditions due to his accident, did not sustain a permanent defect or impairment, and that he was able to do the same type of work he performed at the time of his accident.

The respondent testified that after he was laid off from work at the Double U Ranch, he was unemployed for a period of approximately one and a half months. He then began working at the Tucson House on a part-time basis as a security guard. The respondent continued working for the Tucson House until approximately a week and a half prior to the formal hearing held on October 1, 1970.

At the hearing of October 1, 1970, the hearing officer heard the testimony of the applicant, Dr. McDivitt and a radiologist. Dr. Cortner was unable to attend but his reports were before the hearing officer. At the end of the hearing the parties stipulated that the respondent had sustained an industrial injury by accident arising out of and in the course of his employment and that the respondent was entitled to medical benefits from and after September 29, 1969, until his condition became stationary. There was, however, one other issue upon which the hearing officer had to reach a decision. This issue concerned the respondent's entitlement to temporary disability compensation.

The hearing officer attempted to obtain an agreement between the parties as to the temporary disability compensation to which the respondent was entitled. When it was apparent that the parties could not agree, it was suggested by respondent's counsel that a report be solicited from Dr. Cortner, the respondent's attending physician, concerning the respondent's ability to perform his regular work from the time of his industrial accident up to the time of the hearing.

On October 1, 1970, a letter addressed to Dr. J. W. Cortner was drafted by the respondent's counsel. In this letter, the doctor was asked to state his opinion of the respondent's ability to work as a result of his industrial accident from October 4, 1969, to the date of the letter. The wording of the letter was approved by counsel for petitioner State Compensation Fund and was forwarded to Dr. Cortner for his opinion. The doctor replied at the bottom of the page, "This patient has been on a regular work status since I first saw him 1-4-69."

On November 19, 1970, the hearing officer issued his "Decision Upon Hearing and Findings and Award for Compensable Claim." With respect to the question of temporary disability benefits, the hearing officer made *inter alia* the following findings and award:

"5. That following said industrial accident, applicant continued at his regular work with the defendant employer until Monday, October 6, 1969, when he was laid off from work.

6. That applicant was first treated for his injury on Saturday, October 4, 1969, when he was treated by Dr. Cortner, an orthopedic surgeon, for a condition diagnosed as 'hematoma and mild sprain-neck;' that this physician then reported that the applicant was able to do the same type of work he performed at the time of injury; that treatment by this physician continued.

7. That applicant did not work for a month and a half after his employment with the defendant employer terminated; that he then was employed as a security guard at an apartment house on a part-time basis until mid September 1970 when he was laid off from work because the job was eliminated; that the applicant has been unemployed since such termination.

8. *That although there is medical opinion that the applicant was able to return to his regular employment, there is no demonstrable evidence of any actual ability to perform such work and in fact there is evidence of his release from his regular job and earning part-time wages during the period of temporary partial disability*; therefore, the applicant is entitled to 65% of the difference between the wages earned before the injury (employee's average monthly wage at the time of injury) and the wages which he is able to earn thereafter during the period of temporary partial disability (A. R.S. 23–1044). (Emphasis added.)

9. That the applicant is entitled to temporary partial disability compensation benefits, as provided by law, from October 4, 1969 until his condition as referable to the subject industrial episode becomes stationary.

\*　　\*　　\*　　\*　　\*　　\*

AWARD

\*　　\*　　\*　　\*　　\*　　\*

2. Temporary partial disability compensation benefits, from and after October 6, 1969, as provided by law."

The Commission approved the findings and award of the hearing officer. Petitioners have filed this Petition for Writ of Certiorari questioning the award and the Commission's finding that the respondent was entitled to temporary partial disability starting October 4, 1969.

It is a cardinal rule in appellate review that an award of the Industrial Commission, as trier of facts, must be sustained if the Commission's findings are reasonably supported by the evidence. Valdon. v. Industrial Commission, 103 Ariz. 547, 447 P. 2d 239 (1968). It is also the rule that the burden of proof as to the disability lies upon the claimant. Montgomery v. Industrial Commission, 7 Ariz.App. 109, 436 P.2d 621 (1968).

Petitioners contend that the only medical testimony concerning the ability of respondent Ferrell to assume his regular work duties was that of Dr. Cortner. Respondents answer that the testimony of Dr. McDivitt, the applicant and Dr. Cortner sustain the award.

At oral argument the respondent Ferrell admitted that the testimony of Dr. McDivitt, standing alone, fails to relate back to the period in question and would be insufficient to prove his disability. Respondent Ferrell however, claims that this void is filled by the medical reports of Dr. Cortner and by his own testimony.

Respondents' theory as to the medical testimony is that, in reality, there is a conflict in the medical testimony since both Drs. Cortner and McDivitt diagnosed exactly the same symptoms. We find that the record belies this contention. Dr.

McDivitt's one and only examination of June 16, 1970, revealed that Ferrell had a marked limitation of neck movement. This led the doctor to conclude that Ferrell was unable to pursue his regular occupation as a truck driver. Dr. Cortner's medical reports do not reveal any "marked limitation" of the neck. In fact, his reports indicate that although Ferrell was complaining about his neck the motions of the neck were full and without spasms.

It is obvious the doctors were not diagnosing the same symptoms and that somewhere in point of time Ferrell's neck condition worsened to the point of marked limitation observed by Dr. McDivitt. The crucial unanswered question is when did this marked limitation occur? There was no medical evidence on this point which would enable the Commission to compute the beginning of the period of temporary disability from any date other than that of June 16, 1970, the date of Dr. McDivitt's examination.

Respondent Ferrell testified that he could not work as a truck driver because his neck had been hurting since the accident. Pointing to this testimony, he maintains that the lack of medical testimony on his ability to return to his regular work during the period in question does not preclude his receiving temporary disability benefits. With this contention we agree. In Scherer v. Industrial Commission, 87 Ariz. 224, 349 P.2d 786 (1960) the court stated:

"Secondly, the real issue sought to be presented seems to concern the Commission's determination that petitioner could return to his employment with Motorola and that he was able to perform the duties of such employment and hence did not suffer any loss of earning capacity. There is no conflict in the medical testimony regarding Scherer's physical ability to perform the duties of a plant guard. Drs. Hartman, Goley, and Ergenbright, so testified. *It is only the petitioner who claimed he could not do such work.* The Commission, as trier of the fact, was at liberty to choose whom to believe." 87 Ariz. at 226–227, 349 P. 2d at 788. (Emphasis added)

Had the Commission in this case, decided to believe Ferrell's testimony as to his ability to return to his regular work, this court, under the doctrine espoused in *Scherer,* would be bound to affirm the Commission's determination. However, the findings made by the hearing officer and approved by the Commission indicate to us that the hearing officer did not rely on the testimony of Ferrell as to his own physical condition, but rather, that he labored under a misconception as to the burden of proof. Contrary to the findings of the hearing officer set forth in finding #8, the burden is not on the carrier or employer to demonstrate the actual ability of the claimant to perform his regular work. On the contrary, the burden is on the claimant to prove his inability to perform his regular work. Furthermore, the mere showing that a claimant has not returned to his regular work is not proof of the fact that he cannot work because of a physical disability arising out of an industrial accident. Scherer v. Industrial Commission, supra.

The Commission's finding and award that respondent Ferrell is entitled to temporary partial disability compensation benefits from October 6, 1969, is hereby set aside.

KRUCKER, C. J., and HATHAWAY, J., concur.

Note: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.