409 P.2d 562

Norman John **NELSON**, Petitioner,

v.

The **INDUSTRIAL COMMISSION** of Arizona and Louis **Fishman (Paradise Inn), Respondents.**

**1 CA–IC 43.**

Court of Appeals of Arizona.
Jan. 10, 1966.

Rehearing Denied Feb. 3, 1966.

**404**

Cattany & Howe, by Robert E. Cattany, Tucson, for petitioner.

Robert K. Park and Dee-Dee Samet, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of an award of the Industrial Commission of Arizona denying benefits for permanent injury.

Norman John Nelson at the time of the accident on 7 November, 1963, was 63 years old and worked as a maintenance man for the respondent motel in Tucson, Arizona. While climbing a ladder with a 50 pound bucket of tar on his shoulder, the ladder gave way and he fell to the ground, the bucket of tar landing on top of petitioner. He suffered fractured left ribs and a left pleural effusion of the chest.

Claimant was discharged from treatment, and the Commission issued a findings and award for total temporary disability to 6 January, 1964, and terminating benefits as of that date. Petitioner, claiming that he had suffered permanent heart damage, filed a petition for rehearing which hearing was held in Tucson on 29 December, 1964.

At the hearing, both Mr. Nelson and his wife testified as to his then present disability, and the testimony of three doctors E. Metz Wright, Jr., M.D., Elmer E. Yeoman, M.D. and James Edward O'Hare, M.D., was taken. The evidence at that hearing clearly indicated that the claimant suffers from aortic stenosis, which is a change in the aortic valve and from coronary artery insufficiency, and that the claimant is totally disabled as a result of these conditions. The only question we have to determine is whether the evidence reasonably supports the finding of the Commission, that there is no causation between the accident and petitioner's disability.

The strongest testimony in favor of the petitioner came from Dr. Wright and Dr. Yeoman. Dr. Wright testified in response to a question:

"Question: What about the heart murmur? What did it signify?

"Answer: Well, I felt at the time that the heart murmur might have been due to damage to the heart as a result of the injury to the chest."

And Dr. Yeoman testified as follows:

"Question: Did the accident that Mr. Nelson described to you have any effect on this pre-existing aortic stenosis?

"Answer: I don't think one can honestly say that it has in one way or the other. I mean the aortic stenosis obviously was present before the accident and there is no way that I can say that this was adversely or otherwise effected as far as the injury was concerned."

And:

"Question: Well, if we can assume as a fact that Mr. Nelson's problem of aortic stenosis and the coronary insufficiency or the coronary artery disease were not caused by the accident, by the blow of the bucket on the chest, we are still faced with the problem of determining, if we can, whether this accident played any role in aggravating the condition or causing the symptoms to be manifested.

"Answer: It certainly didn't help him, and I think that most people would have to say that the stress at this time is an aggravating factor. I don't know where that leads us. The other thing I'll say—I think he is disabled. I think his symptoms are of such a degree he can't work."

And also:

"Question: The injury received in November of 1963 could well have possibly been an aggravating factor in bringing the symptoms to light?

"Answer: I would say that it could be an aggravating factor although not a causative factor as such. One couldn't deny that it could be an aggravating factor."

The testimony of Dr. Yeoman and Dr. Wright is controverted by Dr. O'Hare who treated the petitioner when he was admitted to the hospital as a result of the accident. Dr. O'Hare testified as follows:

"Question: The reason I asked you that was because I want to ask you, do you have an opinion as to whether this accident on November 7, 1963, either caused, aggravated or hastened the progress of the condition which you heard Dr. Yeoman describe?

"Answer: Yes, let's take them in order. Cause—obviously no, it did not cause it. I think that Mr. Nelson has both aortic stenosis and coronary artery disease. This is my opinion and I think I would have to be proven completely wrong by very detailed studies. As a matter of fact, I'm quite sure of my opinion so much that I wouldn't even suggest that he undergo these things. So I think he has both, and I think he has had them for a long number of years. Not one or two, but on the order of ten or twenty, something like this. So that cause, I would say no. It didn't cause it at all.

"Aggravate—in the ordinary sense in which we use aggravation I would say no. Sometimes a person has to who has coronary artery disease, if he gets symptoms the first time he gets them, and I think he got them sometime, I don't know February or March sometime in there probably. I am familiar with the various types of heart disease which are aggravated by trauma. In fact, some of them are caused by trauma. Aortic stenosis is not one of them."

Dr. O'Hare then went on to state that in his opinion, the accident did not cause or aggravate the petitioner's condition.

Although we can well sympathize with petitioner, our function is not to try the case anew, but merely to determine whether the evidence before the Commission is sufficient to reasonably support their decision. We have reviewed the testimony and believe there is sufficient evidence upon which the Commission might reasonably base an award denying to defendant an award for permanent injuries, Snyder v. Industrial Commission, 96 Ariz. 81, 392 P.2d 34 (1964), Charles v. Industrial Commission, 2 Ariz.App. 202, 407 P.2d 391 (1965).

The award is affirmed.

STEVENS, C. J., and DONOFRIO, J., concur.