432 P.2d 921

Donald Poerce GARRARD, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Defendant Insurance Carrier,

Western Greyhound Lines, Division of the Greyhound Lines, Incorporated, Defendant Employer, Respondents.

No. I CA–IC 147.

Court of Appeals of Arizona.

Oct. 27, 1967.

Hirsch, Van Slyke & Ollason, by Lawrence Ollason, Tucson, for petitioner.

Robert K. Park, Chief Counsel, by Noel J. R. Levy, Phoenix, for respondents.

CAMERON, Chief Judge.

This case is before the Court by writ of certiorari granted on the petition of the claimant, Donald P. Garrard, to review the lawfulness of the decisions of the Commission in their case number BC 52146 in which the petitioner was the applicant and Western Greyhound Lines was the defendant employer. The file in a companion case, Commission Number AZ 10107, in which the Pacific Greyhound Corporation was the respondent was certified to this Court at the same time but this opinion relates only to Industrial Commission Case Number BC 52146.

The facts necessary for determination of this matter are as follows. The petitioner had been employed by either respondents Western Greyhound Lines, Inc. or Pacific Greyhound Corporation since July 1941. His duties consisted of driving a bus and loading and unloading passengers, baggage, and freight including express packages. The petitioner first hurt his back in 1946. He filed an industrial claim at that time, was treated, was not off work long, and after an examination in Phoenix, was released to work and received a final award from the Industrial Commission. The petitioner has had a problem with his back off and on ever since that injury. On 5 March 1964, petitioner, who was 52 years old at the time, strained his back while unloading a trunk. He was treated, and was discharged as able to return to regular work on 6 April 1964, and he was discharged from treatment 10 days later. The accident and injury of 5 March 1964 was the subject of one claim, AZ 10107, with the Industrial Commission in which Pacific Greyhound Corporation was the respondent employer.

On 14 October 1965, the petitioner sustained another industrial injury while handling a piece of express, a package containing a sixty-five pound crankshaft. The petitioner bent over with the package and dropped it, causing his back to pain, and causing him to drop to his knees. He continued with his trip from Seligman, Arizona, to Kingman, Arizona, a distance of approximately 87 miles, and received treatment at Kingman. This incident is the subject of the third claim, Claim Number BC 52146 presently before this Court.

The doctor who examined the claimant at Kingman in 1965 diagnosed low back strain, anxiety, and hypertension. There had been no previous diagnosis of hypertension in petitioner's case. The petitioner was seen the following day by Dr. Sitterly at Flagstaff, Arizona, who also recorded high blood pressure. He was started on antihypertensive medication, which, according to the testimony, has held his blood pressure to normal. During this hospitalization x-rays were made of the spine which showed a narrowing between C–6 and C–7, and degenerative arthritis secondary to disc degeneration in the cervical and lumbosacral regions.

The Commission issued findings and award for temporary disability on 5 May 1966, finding that the petitioner did not suffer a permanent disability as the result of the accidental injury. This award was protested, hearings were held in this matter, as well as in Case Number AZ 10107, and the Commission on 27 March 1967 issued the award complained of affirming the previous award. In Case Number AZ 10107 the Commission issued a "Decision Upon Hearing and Findings and Award Denying Reopening of Claim."

We are called upon to determine whether the award of the Industrial Commission in Case Number BC 52146 is reasonably supported by the evidence.

Petitioner claims that the award is not supported by the evidence. Petitioner first

claims that his hypertension was preexisting and aggravated by the accident in this case, and therefore, the Commission erred when it failed to take it into consideration in arriving at its decision.

■■ The injured workman has the burden of proof in relation to establishing that he is entitled to compensation. Lewis v. Industrial Commission, 2 Ariz.App. 522, 410 P.2d 144 (1966). It is the function of the Court of Appeals when petitioned to review Industrial Commission awards to determine whether the evidence before the Commission is sufficient to reasonably support their decision and not to try the case anew. Nelson v. Industrial Commission, 2 Ariz.App. 403, 409 P.2d 562 (1966).

■ This Court has reviewed the record with regard to petitioner's allegation that his hypertension was related to the industrial incident in Case Number BC 52146, and it is the opinion of the Court that the petitioner has failed to sustain his burden of proving a causal connection. At best, there was a conflict in the medical evidence with regard to the causal relationship between the hypertension and the industrial incident, and it is the prerogative of the Industrial Commission to resolve such conflicts in evidence. Dunham v. Industrial Commission, 4 Ariz.App. 575, 422 P.2d 406 (1967).

■ Petitioner next contends that the Commission erred in finding that he has no present disability attributable to the industrial injury of 14 October 1965. The petitioner's testimony with regard to his back condition can be summarized in this manner: He recognizes that he has a back problem, and he has "learned to live with it". In this respect the petitioner is at variance with the one member of the medical consultation board who testified at the hearing. Dr. Hoffman testified as follows:

"Q  Then if the investigation along those lines or if the investigator concluded that the problem was not psychogenic, would you feel that Mr. Gar-

rard was not injured simply because there were not more objective findings than the board discovered in its examination?

"A  I think that you are again taking the term in its broadest sense of concluded (sic) that we felt he had not been injured. This was not the point. We felt that he had not sufficient findings to preclude his going back to an attempt to work, and then if he then broke down on gainful employ (sic) we may have more objective findings which would then indicate something further as far as that injury would be indicated, and there has been no indication that he is a malingerer or anything else. This is a trial test.

"Q  Doctor, when you made this evaluation in February of this year, and here your memory may be strained because I am sure you have many patients and you have only seen Mr. Garrard once, did you know that after the industrial incident of March 1964 he had attempted to work for a period of several months and had frequent difficulties and there were periods of time when he could not work?

"A  Yes.

"Q  Do you feel that in spite of that experience he still should have gone back and tried again?

"A  Yes.

\*    \*    \*    \*    \*    \*

"Q  Doctor, the thrust of your statement there seems to be—perhaps I misinterpret this—but that unless a patient is a surgical patient you don't think he is incapacitated, is this what you are saying?

"A  No, that is not what I said. We have said that until he shows objective evidence of incapacity we feel that he must return to some gainful employment so we can see

whether or not he will break down again.

\* \* \* \* \* \*

"A All right. Disregarding his hypertension this would be all the more reason to put him back to that type of employment which he regularly had done to attempt \* \* \*, to see if he would break down, to see then if he had to go to something else. Would I want him with hypertension on my route? I would prefer not to have him. I have many patients, however, who have both a surgical lesion and hypertension who do work. This is an individual variant."

It is apparent to the Court from this Doctor's testimony that he had in mind having the claimant return to work so he could do physical damage to his spine which could then be detected by x-rays and become an "objective symptom". It is the opinion of the Court that this is not the intention of the Workmen's Compensation Act. It is not necessary for workmen to put themselves in a position to incur further physical damage in order to receive the benefits of workmen's compensation.

 We have stated before that the uncontradicted testimony of an interested witness may not be disregarded by the Commission. Jeter v. Cudahy Packing Company, 4 Ariz.App. 571, 422 P.2d 402 (1967). Mr. Garrard testified to the effect that he was able to recognize the limitations which his back condition placed upon him, and simply lived within those limitations. He stated that at the time of the hearing he was operating a new trailer park, that he did little or no maintenance work in connection with his duties, but that he was on the premises and attempted to rent the trailer spaces as people came to inquire about them. His testimony indicated that he had no severe problems with his back until the date of the second injury in March of 1964 (AZ 10107), and did not actually retire from his employment as a driver until the date of the third injury, in October

1965. The claimant's testimony was not impeached or contradicted by any of the other witnesses, medical or lay. The doctors testified that he was not a malingerer, he had continued to work following the industrial incident in 1946; he made an honest effort to return to work after his injury in March of 1964, and the evidence supports the claimant's statement. But for the third injury in October 1965 he would not have found it impossible for him to continue as a bus driver with any safety.

This award is set aside.

DONOFRIO and STEVENS, JJ., concur.