460 P.2d 1003

Stanley SIMS, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona, Respondent,

Continental Exploration, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. I CA–IC 228.

Court of Appeals of Arizona, Division 1.

Department A.

Nov. 12, 1969.

Strickland, Altaffer, Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, by R. Kent Klein, Phoenix, for respondent carrier, State Compensation Fund.

DONOFRIO, Presiding Judge.

This is a writ of certiorari to review the lawfulness of the findings and award of the Industrial Commission finding that petitioner's medical condition resulting from his industrially related accident had become stationary, requiring no further medical treatment, and that he had sustained no permanent disability therefrom.

Prior to his injury the petitioner was employed as a "shaft miner" which involved heavy lifting of equipment and supplies. On December 10, 1965 while lifting a sump pump out of the water he suffered an injury to his lower back. The injury was

originally diagnosed as lumbodorsal strain. After a period of medical treatment he attempted to continue his work as a shaft miner, but found that his back pain would not permit it. Thereafter, his employer shifted him to a "hoist man", a job performed primarily in a sitting position and requiring less physical strain. At the last hearing in this case the petitioner had left the State and changed jobs but was still working as a hoist man, a job paying $5.35 per hour as compared to his preinjury earnings as a shaft miner of $3.40 per hour.

Petitioner filed a claim for workmen's compensation and was placed on continuing benefits until June 6, 1967 when the Industrial Commission issued its findings and award for temporary disability which recited:

"* * * the medical evidence reflects that said applicant has no physical or mental disability resulting from said accident * * *"

Petition for hearing was followed by hearing on December 12, 1967, which in turn was followed by the Commission's decision dated August 14, 1968 affirming the June 6, 1967 findings and award, and finding specifically that the petitioner's condition had become stationary, requiring no further medical treatment, with no permanent physical disability. From the August 14, 1968 decision the petitioner brings this writ, arguing that the findings are not supported by the evidence.

As to the finding that the petitioner's condition had become stationary, we note the medical testimony of Doctors Lichwa and Toll. Dr. Edwin A. Lichwa, osteopathic physician specializing in orthopedic surgery, who examined the petitioner on three occasions; namely, March 2 and August 20, 1966, and April 29, 1967, testified as follows:

"* * * When I saw the patient in April of '67 * * * the patient was being treated rather regularly and seemed to be getting nowhere. However, he was working with some degree of discomfort. At that time I felt that his symptoms were not of a magnitude to recommend surgical exploration or anything as radical as that, and recommended that he be discharged and wear his support. In summary, I did find some objective findings referable to nerve root pressure, but the patient's history was not of that to recommend surgical exploration, nor were his findings, and his treatment was sort of not benefiting the patient to any great degree, at which time I recommended he be discharged. However, I did put in my last report that should the neurological deficit increase or his discomfort increase, that a reconsideration should be given to reopening his case.

* * * * * *

"I felt that at this time this progression of events and the situation I have described was sort of a defense situation. A long period of time has transpired, and in treating there was no definitive absolute diagnosis made in regard to frank herniation, and I felt he was being treated and he was guarding himself to some degree and I felt at this time it was time to get off the fence and I felt that he should perform strenuous activity or try to and perform his lumbar exercises, which in my report stated aggravated his pain, and in essence to really go at it to see what would occur subsequently."

Dr. Richard J. Toll, physician and orthopedic surgeon, testified:

"Q Now, sir, * * * did you have an opinion or a recommendation as to further specific medical care and treatment?

* * * * * *

"A We believed that no further medical treatment and specifically outlined physiotherapy, ultrasound and diathermy was indicated. We felt it was important for him to be instructed in the proper exercise program.

"Q What is the reason for that, Doctor Toll?

"A Well, as far as institution of an exercise program in situations of low back pain, we feel that this is probably the keystone of our treatment, and talking

with Mr. Sims and having him demonstrate his exercises, it was apparent that he had not been doing the proper kinds of exercise programs.

* * * * * *

"We specifically recommend that he have no additional physiotherapy and the reason for recommending this in going over the Industrial file, it was our feeling that the man had had physiotherapy * * * to the tune of many many treatments and we felt that he certainly didn't need additional treatments of the same type at this time and in fact the physiotherapy itself, even this length of time with so many treatments so close together, may actually aggravate the muscles and ligaments of the low back. This was the reason for specifically recommendinng that no additional such treatments be given.

* * * * * *

"Q Was there any other further recommendation at that time?

"A It was our opinion that although he was not completely stationary and was in fact symptomatic, that he could return to a light work status using his brace.

* * * * * *

"We felt he was not completely stationary, so I think that implies that we left the possible diagnosis open. Very frequently in cases like this, we recommend that they return to work for two purposes, one, they can either continue to do their work or, two, the going to work will actually bring on the signs and symptoms of a true herniated disc if such is the case, and this is what we are looking for."

[redacted] Although this testimony is somewhat conflicting, clearly it is sufficient to support the Industrial Commission's finding that petitioner's condition was stationary, requiring no further medical treatment, and we must affirm that finding under such evidence. Harmon v. Industrial Commission, 76 Ariz. 40, 258 P.2d 427 (1953).

However, a finding that claimant's condition was stationary should not be construed as a finding that the claimant has no residual physical impairment. In fact, a review of the record reveals that all the evidence points to a conclusion that at the time of the hearing the claimant still suffered from lower back problems, even though there was insufficient proof to name the injury a herniated disc. For example, Dr. Dennis J. Person, an osteopathic physician and surgeon and claimant's treating physician, testified:

"Q * * * I am going to ask you if you can recall whether at the time you finally discharged Stanley Sims, whether you considered his back condition cured?

"A I did not."

We have, then, a fact situation wherein the petitioner has residual physical impairment of the lower back resulting from an industrially related accident, but where the condition has become stationary, requiring no further medical treatment. The rhetorical question appears: Under these facts can the Industrial Commission lawfully find no disability?

[redacted] In order to receive compensation for an injury of the type suffered by petitioner, he must prove an "unscheduled disability" under the category of A.R.S. § 23–1044, subsec. C. The word "disability" as used in the Workmen's Compensation Act refers to injuries which result in impairment of earning power generally, Gibson v. Industrial Commission, 68 Ariz. 313, 205 P.2d 588 (1949), Edwards v. Industrial Commission, 3 Ariz.App. 290, 413 P.2d 800 (1966), and earning power refers to the capability of a worker to sell his labor or services in any market reasonably accessible to him, taking into consideration his general physical functional impairment resulting from his accident, any previous disability, his occupation, age at the time of injury, the nature of the injury and his wages prior to and after the injury. A.R.S. § 23–1044, subsec. D; Eagle Indemnity Co. v. Hadley, 70 Ariz. 179, 218 P.2d 488 (1950); Phelps Dodge Corp., Morenci Br. v. Industrial Commission, 90 Ariz. 248, 367 P.2d 270 (1961); Schnatzmeyer v. Industrial Commission, 77 Ariz. 266, 270 P.2d 794

**578**

(1954). Post-injury earnings, although raising a presumption of commensurate earning power, are not controlling. Allen v. Industrial Commission, 87 Ariz. 56, 347 P.2d 710 (1959). Thus, in determining that the claimant does not have an unscheduled disability the Commission must have found either, (1) that the claimant no longer suffers from an industrially related physical impairment—a conclusion that we have already negated, or (2) that the injury has not caused a loss of general earning power. Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160 (1944); Williams v. Industrial Commission of Arizona, 73 Ariz. 57, 237 P.2d 471 (1951). Since a finding of no disability can be based on either of the above, our rhetorical question can be answered in the affirmative, provided there is evidence to support a finding of no loss of earning power.

■ The mere fact that a claimant has failed to return to his former employment does not establish an alleged disability. Davidson v. Industrial Commission, 72 Ariz. 314, 235 P.2d 1007 (1951); Montgomery v. Industrial Commission, 7 Ariz.App. 109, 436 P.2d 621 (1968). However, where the evidence of a claimant is corroborated by disinterested witnesses it may not be disregarded and the reasonable statements of unimpeached witnesses are presumed true when uncontradicted. Williams v. Williams Insulation Materials, Inc., 91 Ariz. 89, 370 P.2d 59 (1962); Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964). The testimony of petitioner Sims, his employer's manager, John G. Roscoe, and Dr. Person shows without question that after his injury petitioner was not able to perform the difficult work required of a shaft miner because of his low back pain, and that he was not malingering. Nor was it necessary that he subject himself to the risk of further injury by returning to his old job in order to "get off the fence" and see what would happen as Dr. Lichwa and Dr. Toll suggested. Garrard v. Industrial Commission, 6 Ariz.App. 373, 432 P.2d 921 (1967). Although this testimony strongly suggests a loss of earning capacity, we cannot say

there was an absence of reasonable evidence upon which the Industrial Commission could find no loss of earning capacity. As noted earlier, petitioner earned substantially more as a hoist man after his injury than he had earned previously as a shaft miner. In addition, there was no showing by the petitioner that the market of hoist man was unavailable to him. In fact, the evidence implied the opposite. We must, therefore, hold that the findings and award are reasonably supported by the evidence.

■ In conclusion, we note that the findings of the Commission can become res judicata only as to those facts and circumstances existing at the time of the hearing. Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217 (1949).

"* * * Without a continuing power to alter, amend, or rescind its awards, according to the principles heretofore stated, the commission would certainly be greatly hampered in its efforts to carry out the spirit of the law and to do justice between the parties. The spirit of the act is that every employee injured, or in case of his death his dependents, in an accident arising out of and in the course of his employment, shall be indemnified therefor in the manner and amounts provided by the act, but that no employer or insurance carrier shall be mulcted for compensation except upon the terms and conditions of the act, and that they are entitled to protection against false and unfounded claims, as much as the workman is against technical defenses by the employer or insurance carrier. To effectuate this wholly laudable and desirable end, the commission must possess and exercise a continuing power to alter, amend, or rescind the award if the facts justify it. The compensation law is intended as a protection to both the employer and the employee." Zagar v. Industrial Commission, 40 Ariz. 479, 487, 488, 14 P.2d 472, 475 (1932).

■ If later the market of hoist man is not open to petitioner and circumstances develop that petitioner has suffered a loss

of earning power resulting from the industrially related injury, he may petition to reopen on those grounds without having to show a change in physical condition. When our Supreme Court in the *Adkins* case cited above declared Subsection F of A.R.S. § 23–1044 unconstitutional, it expressly reinstated the holding on rehearing of Steward v. Industrial Commission, supra, where it was held that the Industrial Commission retains jurisdiction to reopen on a showing of either, (1) a change in physical condition arising out of the injury which results in a change in earning capacity, or (2) a reduction in earning capacity resulting from the injury, but where there has been no change in physical condition. Elliott v. Industrial Commission, 4 Ariz.App. 181, 418 P.2d 611 (1966); Russell v. Industrial Commission, 104 Ariz. 548, 456 P.2d 918 (1969).

Affirmed.

CAMERON, J., and THOMAS TANG, Judge of Superior Court, concur.

NOTE: Judge HENRY S. STEVENS, having requested that he be relieved from consideration of this matter, Judge THOMAS TANG was called to sit in his stead and participate in the determination of this decision.