481 P.2d 306

**STATE COMPENSATION FUND, and City of Phoenix, Petitioners,**

**v.**

**Carl MOORE, Respondent Employee, The Industrial Commission of Arizona, Respondent.**

**No. I CA–IC 455.**

Court of Appeals of Arizona,
Division 1,
Department A.

Feb. 25, 1971.

Rehearing Denied March 26, 1971.

Robert K. Park, Chief Counsel, by Harlan J. Crossman, Phoenix, for petitioners.

William C. Wahl, Jr., Counsel, Donald L. Cross, Former Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Gorey & Ely by Jeffrey D. Bonn and Joseph M. Bettini, Phoenix, for Carl Moore respondent employee.

CASE, Judge.

Petitioner seeks to set aside an award of the Industrial Commission holding that the respondent is entitled to compensation.

**136**

The facts are as follows:

Respondent Moore was employed as a garbage man for the City of Phoenix. On March 22, 1969, Moore was "flipping" a can of garbage into a truck when a substance of some kind fell in his eyes. He rubbed his eyes for about five minutes and thereafter resumed his duties. He worked some fifteen minutes or more finishing his shift and returned to the City yard where he reported the incident to his supervisor. The redness in his right eye cleared up and he went home. The next day was his day off and on the 24th of March he returned to work. He worked for approximately a week and his eye began to hurt again but it subsequently cleared up and he continued to work at his job. On April 3rd he went to see Dr. Don W. Longfellow, an ophthalmologist, who examined him and found a retinal detachment. Between the 22nd of March and April 3rd, the only medication respondent used was a product known as Murine which he put into his eye each morning.

Dr. Longfellow performed surgery to repair the retinal detachment. A subsequent similar operation was performed which had no causal relation with the first. After the Commission denied compensation a hearing was had, the hearing officer finding that Moore was entitled to compensation. The Commission affirmed this award and this appeal was taken.

The question presented is:

Does the evidence support the finding that the accident sustained by respondent caused or contributed to the detached retina?

The pertinent finding of the hearing officer was as follows:

"That the medical evidence, which is essentially controlling in this type case, establishes that the ultimate disability determined, i. e., a detached retina of the right eye, was not caused by the foreign particle entering the eye, or by applicants rubbing of his eye thereafter; but nevertheless, the most reasonable inference from medical and lay testimony establishes that applicant, in all probability, had a pre-existing peripheral detached retina of the right eye; that said condition became centralized resulting in a loss of vision by reason of the eye irritation resulting from the foreign particle, together with the rubbing of said eye thereafter; that in legal contemplation the onset of the vision loss was hastened or aggravated by the episode and the reasonable aftermath thereof, and therefore constitutes a legal industrial injury. (Citing Cases)"

As we have often pointed out it is not this Court's function to try the case anew but to determine whether the evidence before the Commission is sufficient to reasonably support its decision. Nelson v. Industrial Commission, 2 Ariz.App. 403, 409 P.2d 562 (1966); and Andreason v. Industrial Commission, 6 Ariz.App. 434, 433 P.2d 287 (1967), Kasprowiz v. Industrial Commission, 14 Ariz.App. 75, 480 P.2d 992, 1971. In reviewing an award of the Industrial Commission the evidence adduced will be considered in the light most favorable to sustaining the award. Esmeier v. Industrial Commission, 10 Ariz.App. 435, 459 P.2d 523 (1969).

It is necessary for our determination of this case to examine portions of the medical testimony of Dr. Longfellow who was the sole medical witness.

"Q: Doctor, assuming as a fact that this particle, and we have had testimony here this afternoon he didn't know whether it was sand or what, but it was a particle of something got into Mr. Moore's eye. Would this cause a detached retina?

"A: No."

"Q: Doctor, to a reasonable medical probability did the detached retina have anything whatsoever to do with the sand in the eye some nine days before he saw you or the particles in the eye?

"A: To relate a retinal detachment to something in the eye, I just can't.

"Q: Is that to a reasonable medical probability?

"A: Yes."

Counsel for respondent then questioned the doctor as to whether or not the rubbing of the sand in his eye and a possible previously existing condition could have caused the detachment, as follows:

"Q: Doctor, are you aware that Mr. Moore was a professional boxer for four years?

"A: I was not at that time. I heard that later.

"Q: You known that now?

"A: I heard it. I have never asked Mr. Moore. This is only hearsay.

"Q: I will tell you as a fact that he was a professional boxer for four years and had in fact sixty pro fights aˢ a middleweight * * *. Would we normally expect then, doctor, that there would be an abnormal or, shall I say, a degenerated condition highly probable, highly likely in the eyes of a person who had been a professional boxer, making him retinal detachment prone, if you will?

"A: This could be.

"Q: With that history, doctor, and if we assume that probably a man has a weakened retina, which is predisposed to detachment, and he gets something in his eye, which he described as different and harder than he has ever gotten in his eye before, that he rubs very vigorously and with pressure for some five minutes, and which apparently creates some type of hemorrhage to the extent that his eye is totally bloodshot and redder than it has ever been before, which persists for a period of days and then absolves, may we not then say that there may be, very well may be a causal relationship between the precipitation of the retinal detachment at that time and the particle, or whatever, that got in the eye?

"A: All I can say if he gets hit in the eye hard enough he can detach his retina. It depends on how hard he rubs it."

"Q: When you say to a reasonable medical probability did not precipitate, that is based, is it not, doctor, on the fact that you weren't aware of the background that this man had had in the pro fights?

"A: This might increase his chances, but it still seems reasonable to assume that this would not cause the detachment.

"Q: It wouldn't in any way be involved as a precipitating factor? Medicine isn't exact enough to go that far, is it?

"A: As far as the sand, no. As far as the rubbing, if you consider that he really rubbed the eye which could almost be like a blow to the eye and you want to say that the sand made him rub it, then theoretically I guess there are people who could detach their retina in this manner.

"Q: A person who had been a pro boxer for sixty fights in the middleweight class would certainly be within that portion of the population that could do it?

"A: Could do it, but reasonable medical probability would still be that this would not happen."

And further,

"Q: Let me ask you this question. How hard would a person have to rub his eye to detach the retina in an instance such as we have here? * * *

"A: Yes, you are asking me about a condition that I don't know what existed before. Naturally an eye that had received trauma or in an older aged individual there would be more propensity to retinal detachment. How much rubbing, I don't know. My history was a particle of sand. And this I said could not cause a retinal detachment. I can't say how hard he rubbed his eye. I can't say what his retina looked like before.

"Q: But it is your opinion to a reasonable medical probability that the sand did not—

"A: Did not cause the—

"Q: —cause the detachment?

"A: —the retinal detachment.

"Q: Or precipitated?

"A: Correct."

The testimony of the doctor was unequivocal to the effect that the particle in

the eye and the rubbing of the eye had nothing to do with the detached retina. There was no evidence to show that respondent had a pre-existing peripheral detached retina. We have previously stated:

"When the results of an industrial accident are not clearly apparent to the laymen, the causal relationship between the accident and the petitioner's physical condition, must be determined by expert medical testimony. In this case there was no affirmative medical testimony that a causal relationship existed between the accident and the petitioner's disability * * *"

Bedel v. Industrial Commission, 5 Ariz. App. 470, 428 P.2d 134 (1967); also Beougher v. Industrial Commission, 12 Ariz.App. 469, 472 P.2d 80 (1970).

A review of the testimony of Dr. Longfellow in the light of the Bedel case compels us to reluctantly conclude that the necessary causal connection between the accident and the injury complained of was not established.

The award is set aside.

STEVENS, P. J., and DONOFRIO, J., concur.