529 P.2d 227

Arnie A. LANGBELL, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Arizona Highway Department, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 11658–PR.

Supreme Court of Arizona, In Banc.

Dec. 9, 1974.

Rehearing Denied Jan. 21, 1975.

Langerman, Begam & Lewis by Noel Fidel, Phoenix, for petitioner.

R. E. Taylor, Legal Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Don A. Fendon, Phoenix, for respondents Employer and Carrier.

CAMERON, Vice Chief Justice.

We granted a petition for review of a memorandum decision of the Court of Appeals, Division One, Department A, which affirmed an award of the Industrial Com-

mission of Arizona, finding that the claimant had no permanent physical disability or loss of function for work.

We must answer the following questions:

1. Does the claimant have a present physical impairment or loss of function as the result of the industrial injury, and

' 2. If so, is this a scheduled or unscheduled disability?

The facts necessary for a determination of this matter on appeal are as follows. Arnie Langbell was employed for forty years as a carpenter and a construction supervisor. In 1969 while employed by the State Highway Department, Langbell was struck in the forehead by a timber which caused the retina of his left eye to detach. Langbell was treated by two ophthalmologists and underwent three major eye operations in an effort to remedy the detachment. After the operations and treatment which reattached the retina, the workman's condition stabilized such that there was at most only a slight loss of vision necessitating a prescription for eyeglasses. His doctors, however, forbade him from returning to heavy construction work because another facial blow or severe jarring could very likely cause the retina in the left eye to again detach.

At the hearing before the Industrial Commission hearing officer, two ophthalmologists, Sheldon Davidson, M.D. and Louis Rosenbaum, M.D., testified. Dr. Davidson testified on cross-examination:

"BY MR. SKELTON:

"Q Doctor, you mentioned that there was a possibility that a further redetachment might occur if he were to go back to this heavy work that he is accustomed to doing during his life. Do you have any percentage figure or can you predict with any degree of reliability at all whether it would not?

"A No, I can't predict.

"Q Isn't it true that a lot of people with similar conditions go back to strenuous heavy work and do not suffer further redetachments?

"A I don't think anybody has figures on it, but I really don't agree in that respect. I think it is a mistake to subject yourself to sudden heavy lifting.

"Q This is in the nature of preventative medicine as opposed to any therapeutic medicine, Doctor?

"A Yes.

"Q Doctor, again hypothetically if Mr. Langbell were to go back to heavy work and suffer a redetachment and if he were to have the worst possible surgical result from a redetachment, his disability at that point would be the loss of sight in the left eye, is that correct?

"A Yes."

And Dr. Rosenbaum testified:

"Q In the course of your treating Mr. Langbell, Doctor, did you ever make any recommendations to him as to whether he could resume his normal employment activities?

"A At the time of surgery I told him that he could not return to heavy construction work.

"Q At the time of your last examination on May 9, 1972, Doctor, were those recommendations still the same?

"A Yes."

And:

"Q If Mr. Langbell should suffer another detachment in his left eye or his right eye, what would the consequences of that condition be in terms of Mr. Langbell? What would the prognosis be?

"A It would depend on how much of the retina was detached, where it was detached, how long it had been detached, alterations within the vitreous, surgical complications both immediate and long term. There are changes that occur within an eye after satisfactory surgery, causes of which we do not know, but which can cause traumatic loss of vision that is irreversible. The more frequently one subjects an eye to procedures, the more likely one is to have one of these unfortunate complications occur which are beyond the control of the surgeon."

It was admitted by all concerned that there was no loss of vision of the eye. Because of the doctors' advice, however, the claimant was unable to find work in positions such as work foreman or supervisor even though it is agreed that the claimant made a diligent effort to find work. Claimant testified that a foreman or supervisor is expected to "pitch in" when lifting is required and that "they are not just going to pay you to stand around and look around."

The Fund found that the claimant had a 15% loss of vision in the left eye entitling him to scheduled permanent disability award in the amount of $337.50 a month for three and three-fourths months.

The hearing officer however found no loss of vision and further found that:

"22. Although in the instant case the applicant is more susceptible to future injury, he has *no present physical or mental impairment or loss of function* for work which *must* underlie an award for permanent disability: * * *"

Claimant filed a request for review and the Commission affirmed the award of the hearing officer. The Court of Appeals on 2 April 1974, affirmed the award of the Commission and we granted claimant's petition for review.

### WAS CLAIMANT DISABLED?

■ It has been held that before a claimant can receive an award for loss of earning capacity, there must be a previous finding of general physical functional disability. State Compensation Fund v. Garcia, 12 Ariz.App. 9, 467 P.2d 84 (1970); Sims v. Industrial Commission, 10 Ariz.

App. 574, 460 P.2d 1003 (1969); Rutt v. Industrial Commission, 17 Ariz.App. 142, 495 P.2d 1349 (1972).

■ It has also been held that the Commission is "not required to prospectively rule on speculative future disability that may or may not actually result, and which, if it does result may or may not prove to have some causal relationship to petitioner's industrial injury." Spacone v. Industrial Commission, 14 Ariz.App. 351, 352, 483 P.2d 583, 584 (1971).

■ It does not follow, however, that a claimant must unreasonably risk further injury before he is entitled to compensation:

" * * * It is not necessary for workmen to put themselves in a position to incur further physical damage in order to receive the benefits of workmen's compensation." Garrard v. Industrial Commission, 6 Ariz.App. 373, 376, 432 P.2d 921, 924 (1967).

In the instant case the claimant was precluded from gainful employment as a direct result of the industrially related injury to the left eye. After 40 years in carpentry and construction, he is no longer employable. He can no longer sell his services on the open labor market, even though, as all parties agree, he has made a conscientious effort to do so. The claimant is just as precluded from gainful employment as if a specific disability had been found. As Judge Cardozo has stated:

" * * * He coupled his request for employment with notice that the labor must be light. The applicant imposing such conditions is quickly put aside for more versatile competitors. Business has little patience with the suitor for ease and favor. He is the 'odd lot' man . . ., the 'nondescript in the labor market . . . .' Work, if he gets it, is likely to be casual and intermittent * * *. Rebuff, if suffered, might reasonably be ascribed to the narrow opportunities that await the sick and the halt." Jordan v. Decorative Co., 230 N.Y. 522, 130 N.E. 634, 635–636 (1921). Also 2

Larson Workmen's Compensation Law, 10–119–120.

In claimant's case we are not concerned with "speculative future disability" that may or may not "have some causal relationship to petitioner's industrial injury." Spacone, supra. We are concerned with his present injury-related physical condition which prohibits him from being employed without risk to his health. We agree with the Illinois Supreme Court under admittedly different statutes:

"Some confusion may arise here from the difference between the meaning of medical disability and the legal concept of total and permanent disability under the Workmen's Occupational Diseases Act (citations omitted). For the purposes of the Act, one is disabled when he cannot continue to work 'without endangering his life or health.' * * *" American Steel Foundries v. Industrial Commission, 55 Ill.2d 538, 540, 304 N.E. 2d 604, 605 (1973).

■ We cannot, as respondent suggested at that hearing, hold that the petitioner must risk a future detachment before he is allowed further compensation. We hold that when a workman suffers an industrial injury and as a direct result of that injury he is unable to perform his normal work activities without incurring a substantial risk of reinjury, then he does in fact have a permanent physical disability or loss of function within the meaning of the Workmen's Compensation Act.

UNSCHEDULED

Section 23–1044 A.R.S. concerning "scheduled disabilities" states in part as follows:

"B. Disability shall be deemed permanent partial disability if caused by any of the following specified injuries, and compensation of fifty-five per cent of the average monthly wage of the injured employee, in addition to the compensation for temporary total disability, shall be paid for the period given in the following schedule:

* * * * * *

**332**

"17. For the permanent and complete loss of sight in one eye without enucleation, twenty-five months.

   \*    \*    \*    \*    \*    \*

"21. For the partial loss of use of a finger, toe, arm, hand, foot, leg or partial loss of sight or hearing, fifty per cent of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, or complete loss of sight or hearing, which the partial loss of use thereof bears to the total loss of use of such member or total loss of sight or hearing."

Subparagraphs C and D of § 23–1044 A.R.S. concern "unscheduled" disabilities and provides compensation in those cases not listed as "scheduled" in subparagraph B.

■ Unlike compensation awards for certain scheduled injuries such as loss of limb or organ which are made with or without a loss of earning power, Williams v. Industrial Commission, 73 Ariz. 57, 237 P.2d 471 (1951), the State Compensation Fund makes awards for unscheduled injuries only if there is a disability for work which results in loss of earning power. Matlock v. Industrial Commission, 70 Ariz. 25, 215 P.2d 612 (1950); Estrada v. Industrial Commission, 10 Ariz.App. 580, 461 P.2d 88, corrected opinion 11 Ariz.App. 386, 464 P.2d 973 (1969).

■ We are not concerned herein with a loss of vision. Here we are concerned with a permanent physical disability or loss of function because of the risk to the eye. Admitting that if the claimant went back to heavy construction the resulting reinjury to the eye might mean only a further scheduled disability, it does not follow that a scheduled disability award for loss of eye is the limit of his recovery. The risk to the eye by heavy work is in effect an impairment of the whole function of the body preventing the claimant from seeking and holding gainful employment. We believe that the loss of function should be classified as unscheduled under subparagraphs C

and D rather than scheduled under subparagraphs A and B.

Award set aside.

HAYS, C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.

HOLOHAN, Justice (dissenting).

The established law in this state prior to the present case was correctly followed by the Industrial Commission and the Court of Appeals. I dissent from the view taken by the majority. If the legislature wishes to rewrite the statute to conform to the majority position this is, of course, their constitutional right, but I dislike amending statutes by changes in judicial interpretation.