630 P.2d 56

**HUGHES AIRCRAFT COMPANY,**
**Petitioner-Employer,**

**The Hartford Insurance Co.,**
**Petitioner-Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Donale E. Thompson,**
**Respondent-Employee.**

**No. 1 CA–IC 2411.**

Court of Appeals of Arizona,
Division 1.

April 16, 1981.

Rehearing Denied May 28, 1981.

Review Denied June 16, 1981.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Donald L. Cross, Larry L. Smith, Phoenix, for petitioner-employer and petitioner-carrier.

Calvin Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Miller, Pitt & Feldman, P. C., by Samuel L. Moffett, Tucson, for respondent-employee.

OPINION

O'CONNOR, Presiding Judge.

The issue in this special action review of an Industrial Commission award is whether the administrative law judge correctly determined that the respondent employee's industrially caused allergic contact dermatitis is a permanent impairment entitling him to a loss of earning capacity determination pursuant to A.R.S. § 23–1047. We affirm the award.

The facts are undisputed. Prior to the industrial injury, the respondent employee, Donale Thompson, had worked for the petitioner employer and other employers as a machine operator for approximately 13 years. During this period, he often was exposed to a coolant oil known as Wynn's 331; however, he never had a skin disorder as a result of this exposure.

In June, 1978, while working with machines and using Wynn's 331 oil in the course of his employment with the petitioner employer, Mr. Thompson's hands developed an active scaly eruption. Although this condition required immediate medical attention, he continued to work. After he was assigned to work with machines that did not expose him to Wynn's 331 oil, the skin condition completely cleared. He was subsequently reassigned to work with machines using Wynn's 331 oil, and the skin condition recurred. He then discontinued work and consulted a dermatologist, Daniel C. DeBoer, M.D. Dr. DeBoer successfully treated the skin condition, which completely

healed. In February, 1979, he was released for work with the sole restriction that he avoid all contact with Wynn's 331 oil.

During the course of Dr. DeBoer's treatment, the labor union to which Mr. Thompson belonged called a strike against the petitioner employer. The union and employer subsequently entered into a collective bargaining agreement pursuant to which union members were rehired on the basis of seniority. The administrative law judge specifically found that the reason the employer had not rehired the respondent was his lack of seniority, not the restriction that he avoid contact with Wynn's 331 oil.

The carrier accepted the respondent's claim for benefits for the June, 1978 injury and paid medical and temporary compensation until the February, 1979 release for work. Based on Dr. DeBoer's work release, the carrier issued its notice of claim status terminating compensation because the respondent had been discharged and had no permanent disability. The respondent employee requested a hearing on the merits of the notice to protest the finding of no permanent disability.

At the scheduled hearings, three doctors testified: Carl W. Dasse, M.D., the company physician who initially treated the respondent employee; Dr. DeBoer, the treating dermatologist; and Richard C. Miller, M.D., a dermatologist who saw the respondent employee at the carrier's request in preparation for the hearings. All three physicians agreed that the respondent employee's skin condition was a dermatitis caused by contact with Wynn's 331 oil and that the symptoms had completely healed but would recur upon reexposure to Wynn's 331 oil. The only limitation they imposed on the respondent employee's ability to work was that he avoid contact with Wynn's 331 oil.

Drs. DeBoer and Miller testified that the dermatitis in this case was allergic contact dermatitis, not primary irritant dermatitis. Both types of dermatitis have identical symptoms and require contact with a substance to become symptomatic. In primary irritant dermatitis, contact with the substance itself causes the dermatitis apart from any allergic reaction. For example, substances such as acid or strong detergent are irritants which can cause contact dermatitis apart from any allergy. An allergic reaction, however, is an unusual reaction involving the immune mechanisms of the body. In allergic contact dermatitis, contact with the substance produces the dermatitis only if the individual is allergic to the substance. The allergy may exist prior to the exposure to the substance, or the exposure to the substance may cause a permanent allergy to develop. Dr. DeBoer specifically testified that to a reasonable medical probability the respondent's prior exposure to Wynn's 331 oil, including the exposure while working for the petitioner employer, caused him to become permanently allergic to Wynn's 331 oil in June, 1978. He also stated that because of the permanent allergic condition, the respondent employee would develop contact dermatitis whenever he was exposed to Wynn's 331.

On the basis of the uncontroverted medical testimony that exposure to Wynn's 331 caused not only the symptoms of dermatitis, but also a permanent allergy, the administrative law judge determined that the respondent employee had sustained an industrial injury which had become stationary with a permanent partial disability.[1] After the request for administrative review was denied, the petitioner perfected this Industrial Commission special action to challenge the determination.

The petitioners contend that *Alvarado v. Industrial Commission*, 115 Ariz. 113, 563 P.2d 912 (App.1977) is controlling. In *Alva-*

---

1. The award did not apply A.R.S. § 23–901.01 to the employee's condition. No issue has been raised in the special action as to the characterization of the employee's condition; therefore, we do not address it other than to note that most courts treat allergic reactions as occupational diseases. *See, e. g., Jones v. Morrisson-Knudsen Co., Inc.*, 98 Idaho 458, 567 P.2d 3 (1977); *Knight v. Hudiburg-Smith Chevrolet, Olds, Inc.*, 200 Kan. 205, 435 P.2d 3 (1967); 1B A. Larson, The Law of Workmen's Compensation § 41.62 (1980).

*rado* the claimant relied upon *Langbell v. Industrial Commission*, 111 Ariz. 328, 529 P.2d 227 (1974) to seek a finding that she suffered a permanent disability as a result of a contact dermatitis when working with certain chemicals, which she said precluded her from continuing in the same employment that she had held when she contracted the dermatitis. The *Langbell* case converted a scheduled injury to a permanent unscheduled disability where the claimant's scheduled injury presented a substantial risk of serious reinjury if he were reemployed.[2] The court in *Alvarado* refused to apply the *Langbell* doctrine to Rosalie Alvarado's contact dermatitis where it was established that it did not "prevent her from engaging in other employment and at the time of the hearing she was permanently engaged in another fulltime occupation without complaint or disability." 115 Ariz. at 115, 563 P.2d at 914 (App.1977). The *Alvarado* opinion did not directly address the question of whether an industrially caused permanent allergy could constitute an unscheduled disability entitling the claimant to a loss of earning determination pursuant to A.R.S. § 23–1047. The court in *Alvarado* merely refused to apply *Langbell* to a case of contact dermatitis when the employee was reemployed fulltime without disability.

The respondent employee, Donale Thompson, did not base his claim in this case upon the *Langbell* case, as did the employee in *Alvarado*. He based his claim on the uncontroverted medical testimony that he had an industrially caused permanent allergic contact dermatitis. The *Alvarado* opinion did not indicate whether the dermatitis was of the permanent allergic contact type. Moreover, at the *Alvarado* hearing it was established that the claimant was permanently employed in another employment without any complaint or disability. As of the hearing and award in Mr. Thompson's case, he was not reemployed.

For these reasons, we find *Alvarado* is not controlling. The administrative law judge correctly determined that the respondent employee had sustained a permanent partial unscheduled disability and was entitled to a loss of earning capacity determination pursuant to A.R.S. § 23–1047. The award is affirmed.

WREN and FROEB, JJ., concur.

---

2. A.R.S. § 23–1044(H) was amended by Laws 1980, Ch. 246, Sec. 33. It legislatively overrules *Langbell*, at least insofar as converting an otherwise scheduled disability into an unscheduled one is concerned. A.R.S. § 23–1044(H), as amended, provides:

   Any single injury or disability listed in subsection B of this section which is not converted into an injury or disability compensated under subsection C of this section by operation of this section shall be treated as scheduled under subsection B of this section regardless of its actual effect on the injured employee's earning capacity.