633 P.2d 1052

Geraldine HUNTER, Petitioner-Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Food Giant Arden Mayfair, Inc., Respondent-Employer,

Fremont Indemnity Company, Respondent-Carrier.

No. 1 CA–IC 2347.

Court of Appeals of Arizona, Division 1, Department C.

June 23, 1981.

Rehearing Denied July 31, 1981.

Review Denied Sept. 17, 1981.

Dale D. Tretschok, P.C. by Dale D. Tretschok, Tucson, for petitioner-employee.

Calvin H. Harris, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Jones, Teilborg, Sanders, Haga & Parks, P.C. by J. Russell Skelton and Gregory L. Folger, Phoenix, for respondent-employer and respondent-carrier.

## OPINION

O'CONNOR, Presiding Judge.

This special action is from a determination by the Industrial Commission closing petitioner's industrial claim with a finding of no permanent disability. Specifically, the issue is whether an industrially caused condition known as "meat wrapper's asthma," which prevents petitioner from continuing her employment as a meat wrapper,

constitutes a permanent impairment within the meaning of the workmen's compensation statutes. We find that the evidence does not support the administrative determination of no permanent impairment and, therefore, set the award aside.

Petitioner, Geraldine Hunter, worked as a meat wrapper for approximately nine years when she developed a bronchial hypersensitivity known as meat wrapper's asthma. She filed a workmen's compensation claim for benefits. Her claim was accepted by the carrier and she was eventually discharged by her treating physician. The carrier issued a notice of claim status closing the claim. Petitioner requested a hearing alleging that she had sustained permanent physical impairment. After a hearing, the administrative law judge entered an award finding petitioner's condition to be stationary with no permanent impairment and no disability. After the award was affirmed on administrative review, petitioner brought the case to this court by special action.

On review, petitioner contends that, although her lung condition is not ratable under the American Medical Association guides to rating impairments (AMA guides), the medical testimony shows that her industrial injury renders her unable to return to her former employment. Therefore, she asserts she has sustained a permanent functional impairment and is entitled to proceed to a loss of earning capacity determination.

The basic compensation statute, A.R.S. § 23–1044, provides in part as follows:

(C) ... [W]here the injury causes permanent partial disability for work, the employee shall receive during such disability compensation ... but the payment shall not continue after the disability ends. . . .

    \*    \*    \*    \*    \*    \*

(G) The commission may adopt ... reasonable and proper rules to carry out the provisions of this section.

The Industrial Commission has promulgated a rule, A.C.R.R. R4–13–113, which provides in part as follows:

    \*    \*    \*    \*    \*    \*

D. If upon discharge from treatment the physician finds that the employee has sustained an impairment of function as the result of the injury, he shall so state in his report. Any rating of the percentage of functional impairment shall be in accordance with the standards for the evaluation of permanent impairment as published by the American Medical Association in "Guides to the Evaluation of Permanent Impairment". It shall include a clinical report in sufficient detail to support the percentage ratings assigned.

The Arizona Supreme Court upheld the adoption of the rule quoted above in *Smith v. Industrial Commission*, 113 Ariz. 304, 552 P.2d 1198 (1976), and also adopted the definitions of "permanent impairment" and "permanent disability" found in the AMA guides:

(1) *Permanent Impairment.* This is a purely medical condition. Permanent impairment is any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved, which abnormality or loss the physician considers stable or non—progressive at the time evaluation is made. It is always a basic consideration in the evaluation of permanent disability.

(2) *Permanent Disability.* This is not a purely medical condition. A patient is "permanently disabled" or "under a permanent disability" when his actual or presumed ability to engage in gainful activity is reduced or absent because of "impairment" which, in turn, may or may not be combined with other factors. . . .

*Id.* at 305–06 n.1, 552 P.2d 1198 at 1199–2000 n.1.

These definitions make it clear that the determination of whether an injured worker has sustained a "permanent disability," *i. e.*, a loss of earning capacity, is a two-step process. Only after a permanent physical

or functional impairment has been found does the question of loss of earning capacity arise.[1] "Determination of permanent impairment is a medical question while evaluation of a permanent disability is a law question." *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 482, 578 P.2d 159, 161 (1978). Therefore, the question to be resolved in this case is not the legal question whether petitioner has sustained a loss of earning capacity, but the medical question whether petitioner has shown a permanent functional impairment causally related to her employment. If petitioner shows such an impairment, she would be entitled to proceed to a loss of earning capacity determination.

We first consider the effect of a statement made by Irvin Belzer, M.D., that petitioner had suffered "no permanent reaction to her previous employment." A thorough reading of Dr. Belzer's testimony reveals that this statement was not based upon his specific medical findings pertaining to petitioner, but upon his personal view that medical science has not yet determined the long-term effects of meat wrapper's asthma. He stated:

> ... I am not aware of any long term studies that have shown that that kind of exposure of itself continued over a long period of time leads to a permanently disabling situation. There are statements of literature that would imply that.

■ Medical opinions not based on medical findings should not form the basis of an award. *Royal Globe Insurance Co. v. Industrial Commission*, 20 Ariz.App. 432, 513 P.2d 970 (1973). Thus Dr. Belzer's opinion regarding the incomplete state of medical knowledge about meat wrapper's asthma in general does not preclude a finding that petitioner has sustained a permanent functional impairment, where testimony specifically pertaining to petitioner so indicates.

■ The uncontroverted testimony of both medical witnesses, Dr. Belzer and Dr. Engelsberg, M.D., was that petitioner had developed a bronchial hypersensitivity known as meat wrapper's asthma and caused by her industrial exposure to fumes from polyvinyl chloride, which is contained in the material used to wrap meat for sale in markets.[2] Further, both doctors agreed that petitioner's industrially caused physical condition *permanently* precludes her from functioning in any employment which would expose her to polyvinyl chloride or other lung irritants. The industrial commission may not arbitrarily disregard the only reasonable inference which can be drawn from uncontradicted testimony. *Ratley v. Industrial Commission*, 74 Ariz. 347, 248 P.2d 997 (1952). We find that the only reasonable inference here is that petitioner has a permanent industrially caused functional impairment.

Neither doctor was able to rate petitioner's condition under the AMA guides.[3] However, the AMA guides apply only to the extent that they cover the specific impairment and the percentage thereof. *Smith v.*

1. *See, e. g., Sims v. Industrial Commission*, 10 Ariz.App. 574, 460 P.2d 1003 (1969), *supplemental opinion*, 11 Ariz.App. 385, 464 P.2d 972 (1970) (finding claimant's condition stationary with permanent impairment but without disability because he had found re-employment at wages substantially higher than his pre-injury salary, and holding that the Commission must determine that claimant has suffered impairment of loss of function for work before reaching question of loss of earning capacity.)

2. For another case discussing meat wrapper's asthma in greater detail, *see Matter of Compensation of Bracke*, 51 Or.App. 627, 626 P.2d 918 (1981).

3. The AMA guides relating to pulmonary function state:

There are many tests of pulmonary function which have value and interest as guides to therapy and prognosis. For the great majority of patients, however, most of these are neither practical nor necessary for the assignment to a particular class of impairment. Judicious interpretation of the results of tests of ventilatory function combined with the clinical impression gained from weighing all the information gathered should permit the physician to place the patient in the proper class of impairment.

A classification based on clinical and laboratory observations is provided in the text. Each class has both subjective and objective findings and percentage values for impairment of the whole man. Since there is a wide variation in the results of tests of ventilatory function among normal individuals, no

**62**

Industrial Commission, 113 Ariz. 304, 552 P.2d 1198 (1976); Adams v. Industrial Commission, 113 Ariz. 294, 552 P.2d 764 (1976). Since both doctors testified that petitioner's industrially-caused hypersensitivity permanently precludes her from returning to work as a meat wrapper, we find that petitioner has met her burden of proving a permanent functional impairment causally related to her employment. Accordingly, she is entitled to proceed to a hearing to determine whether her impairment has caused a loss of earning capacity.[4] Hughes Aircraft v. Industrial Commission, 129 Ariz. App. 233, 630 P.2d 56 (1981).

The court's opinion in Alvarado v. Industrial Commission, 115 Ariz. 113, 563 P.2d 912 (App.1977) does not require a contrary result. The Alvarado opinion did not directly address the question of whether an industrially caused permanent functional impairment due to a hypersensitivity could constitute an unscheduled injury entitling the claimant to a loss of earning capacity determination pursuant to A.R.S. § 23–1047. The court in Alvarado merely analyzed the application of the Langbell[5] doctrine to a case of contact dermatitis when the employee was reemployed full time without disability. In the instant case petitioner was still unemployed at the time of the hearing, although she had attempted to find other employment.

Because the uncontroverted medical testimony in this case is that petitioner's industrially-caused condition has permanently re-

percentage of impairment of the whole man is said to exist until the functional impairment has progressed to such a state as to meet the criteria set forth in Class 2.
American Medical Association, Guides to the Evaluation of Permanent Impairment, p. 67 (1971).

4. At any loss of earning capacity hearing, petitioner must prove a loss of earning power generally. It is not sufficient to prove an inability to perform the particular work petitioner was doing at the time she developed her meat wrapper's asthma. See Alsbrooks v. Industrial Commission, 118 Ariz. 480, 578 P.2d 159 (1978); Savich v. Industrial Commission, 39 Ariz. 266, 5 P.2d 779 (1931).

5. Langbell v. Industrial Commission, 111 Ariz. 328, 529 P.2d 227 (1974) held that a scheduled injury must be converted to unscheduled if

stricted her functional ability to return to work as a meat wrapper, the award finding no permanent impairment was in error. Our disposition of the matter makes it unnecessary to reach the other arguments raised by petitioner, including those regarding the fairness of the proceedings.

The award is set aside.

WREN and FROEB, JJ., concur.

there existed a substantial risk of serious reinjury if the workman were reemployed. See also Espey v. Industrial Commission, 121 Ariz. 289, 589 P.2d 1321 (App.1978). A.R.S. § 23–1044(H) was amended by Laws 1980, Ch. 246, § 33. It legislatively overrules Langbell, at least insofar as converting an otherwise scheduled disability into an unscheduled one is concerned. A.R.S. § 23–1044(H), as amended, provides:

Any single injury or disability listed in subsection B of this section which is not converted into an injury or disability compensated under subsection C of this section by operation of this section shall be treated as scheduled under subsection B of this section regardless of its actual effect on the injured employee's earning capacity.